IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHNNY EDWARD RODGERS,   } | |
| } | |
| Plaintiff,   } | |
| } | |
| v.   } | Civil Action No.: 2:12-CV-00840-RDP |
| } | |
| MICHAEL J. ASTRUE,   } | |
| Commissioner of   } | |
| Social Security,   } | |
| } | |
| Defendant.   } | |

**MEMORANDUM OF DECISION**

Plaintiff Johnny Edward Rodgers brings this action pursuant to Title XVI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Supplemental Security Income ("SSI"). *See also*, 42 U.S.C. § 1383(c). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

This action arises from Plaintiff's application for SSI, filed protectively on April 28, 2009, alleging disability beginning February 1, 2009. (Tr. 248-54). The Social Security Administration denied Plaintiff's claim on July 8, 2009. (Tr. 113-18). Unsatisfied with the Commissioner's decision, Plaintiff requested a hearing before an Administrative Law Judge. (Tr. 119). Plaintiff's request was granted, and a hearing was held on November 9, 2010 before Administrative Law Judge Michael L. Levinson ("ALJ"). (Tr. 105). At the hearing, the ALJ granted leave to amend Plaintiff's alleged onset of disability date to May 8, 2009. (Tr. 97, 105,

1

262). After this hearing, the ALJ determined that further medical evidence needed to be collected, and a second hearing was set for April 5, 2011. *Id.*  After reviewing the medical evidence presented at the second hearing, the ALJ determined that "further clarification from a medical expert" was necessary, and a final supplemental hearing was held on August 11, 2011. *Id.*  In his decision dated August 20, 2011, the ALJ concluded that Plaintiff had not been under a disability within the meaning of § 1614(a)(3)(A) of the Act since April 28, 2009, the date the application was filed. (Tr. 109). The Appeals Council then denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3), thus making the Commissioner's decision final and a proper subject of this court's judicial review. *See* 42 U.S.C. § 1383(c)(3).

Plaintiff was forty-seven years of age at the time of the ALJ's decision. (Tr. 248). Plaintiff has completed one year of college (Tr. 274), and has prior work experience as a parts inspector, house repairer, cook, dishwasher, store laborer, and grinder. (Tr. 34-36, 108).  In his application, Plaintiff alleged disability based on asthma and chronic back pain. (Tr. 268).

The first medical documents in the record date back to October 11, 2005. (Tr. 342-44). On that date, Plaintiff fell off a ladder and was taken to Princeton Baptist Medical Center, where he was treated for pain in his back and shoulders. (Tr. 342). The ER records from Princeton Baptist note a previous back injury, also sustained in a fall. (Tr. 344).  Most likely, this is a reference to when Plaintiff fell off a house while making repairs some years previously. (Tr. 80). According to Plaintiff's testimony, the fall off the house precipitated a steady decline in his ability to work because that event was when his "pain started." *Id.*

Medical records from UAB Hospital show that in November 2005, Plaintiff suffered second-degree scald burns to 3% of his total body surface area. (Tr. 323).  Plaintiff was given

medication for the pain, and discharged the next day with instructions to keep the wound clean. (Tr. 324).

Plaintiff testified that in 2009, he greatly exacerbated his pre-existing back injury while digging a ditch, leaving him unable to work due to back pain. (Tr. 43, 80-81). In April 2009, Plaintiff went to Cooper Green Hospital complaining of back spasms. (Tr. 332-34). Medical records dated April 20, 2009 indicate that X-rays were taken, and Dr. William Cason, diagnosed Plaintiff with spondylosis of the cervical spine. (Tr. 336). A little over a year later, Plaintiff visited UAB Medical West, seeking treatment for the chronic pain in his right shoulder. (Tr. 349). On May 29, 2010, new X-rays were taken of Plaintiff's cervical spine, this time revealing "mild spondylotic change" at C4-C5 and "advanced [degenerative disc disease] and spondylosis at C5-C6 and 6-7." (Tr. 355).

In June 2010, disaster—quite literally—struck: Plaintiff was hit by an automobile as he attempted to cross a street. (Tr. 72, 377). Following this incident, Plaintiff was admitted to UAB Hospital on June 17, 2010. (Tr. 362). Clinical notes describe Plaintiff's condition upon arrival as "combative, yelling, uncooperative, and not following commands." (Tr. 386). CT scans were performed, revealing a "minimally displaced intra-articular fracture of the distal radius" (Tr. 369), a "triquetral fracture" (Tr. 375), and a "tiny nondisplaced fracture of the base of the distal phalanx of the right thumb" (Tr. 368). However, CT scans revealed no evidence of a fracture or dislocation of the cervical spine or shoulder (Tr. 367, 371). A splint was applied to Plaintiff's wrist, and he was prescribed Lortab to manage the pain. (Tr. 365, 378). Plaintiff was discharged three days later with instructions to follow up at Cooper Green Clinic. (Tr. 378).

Two weeks after this accident, medical records from Cooper Green indicate Plaintiff was taking seven different medications; Hydrocodone, Oxycodone, Tramadol, Robaxin, Motrin,

Gabapentin, and Lisinopril. (Tr. 405). X-rays taken around that time revealed acromioclavicular separation, and an old compression fracture at C5-C6. (Tr. 410). The most recent medical records from Cooper Green, dated September 29, 2010, indicate Plaintiff's broken wrist was healing well. (Tr. 434).

During his alleged period of disability, Plaintiff estimated that he experienced back pain about eighty percent of the time. (Tr. 66). When asked to describe his pain, Plaintiff testified that the aching pain and spasms in his shoulder often migrated down into his right arm. (Tr. 59). On a scale of one to ten, Plaintiff rated this pain as ranging from between a five to a seven. (Tr. 67). Plaintiff reported that his pain worsened with long periods of sitting, standing, or walking. (Tr. 63). Plaintiff asserts that from his alleged onset of disability date onwards, he used Cooper Green "as his primary care [facility] for pain management." (Tr. 44). Clinical notes written by Dr. Martin Bohnenkamp, a treating physician at Cooper Green, describe Plaintiff's shoulder pain as "out of proportion to exam." (Tr. 407). Furthermore, Dr. Bohnenkamp describes Plaintiff as "not truthful" with respect to his treatment history, and prone to giving "convoluted discharge history that is nonsense." *Id.*

After reviewing all of Plaintiff's medical records, Dr. Brovender—an impartial medical expert and board-certified orthopedic surgeon—determined that Plaintiff was afflicted with several severe medical impairments: namely, "degenerative disc disease and degenerative joint disease of the cervical spin, and acromioclavicular separation, [sic] a fractured right wrist, and a fractured carpal bone." (Tr. 25). However, Dr. Brovender indicated that none of these ailments, either combined or separately, met or equaled any of the listed impairments. (Tr. 26). Based on Plaintiff's impairments and taking into account Plaintiff's subjective experience of pain, the medical expert opined that Plaintiff was capable of lifting twenty-five pounds frequently, and

4

fifty pounds occasionally, and while Plaintiff should not climb ladders or scaffolding, Plaintiff was capable of sitting or standing for six to eight hours. (Tr. 27-31).

**II.     ALJ Decision**

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity " is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).   Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to

perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the instant case, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since his application for SSI benefits, and that Plaintiff is afflicted with several severe impairments—arthritis of the cervical spine, degenerative joint disease, status post fractured radius bone, acrimonies clavicle separation, and burns to 3% of the body. (Tr. 106). However, the ALJ found that despite these maladies, Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.*) After consideration of the record, the ALJ then determined that Plaintiff has the residual functional capacity to lift/ carry fifty pounds occasionally, and twenty-five pounds frequently. (Tr. 107). The ALJ determined that although Plaintiff is unable to climb ropes or scaffolding, Plaintiff is capable of sitting or standing for six hours out of an eight hour work day. *Id.* Finally, the ALJ found that Plaintiff is capable of performing past relevant work as a store laborer, dishwasher, cook, parts inspector, and grinder. (Tr. 108). Based upon this analysis, the ALJ concluded that Plaintiff is not disabled. (Tr. 108-09).

### III.     Plaintiff's Argument for Reversal

Plaintiff presents two arguments why this court should reverse the decision of the ALJ. First, Plaintiff contends "the ALJ erred in failing to develop the record." (Pl.'s Mem. 11). Second, Plaintiff contends the ALJ committed error by "according dispositive weight to the medical expert opinion absent such development [of the record]." (Pl.'s Mem. 10).

### IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's

findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.   Discussion**

After careful review, the court concludes that the ALJ's fact finding is supported by substantial evidence and that correct legal standards were applied. The court addresses Plaintiff's arguments below.

**A.  The ALJ Fulfilled his Duty to Fully and Fairly Develop the Record.**

Plaintiff claims the ALJ failed in his duty to develop the record in two regards. Plaintiff argues the ALJ committed error by: (1) not obtaining up-to-date medical records from Cooper Green Hospital; and (2) not ordering a consultative examination.

**1.  The ALJ Adequately Developed the Record with Respect to Plaintiff's Medical Records.**

First, Plaintiff argues the ALJ committed error by failing to supplement the medical records from Cooper Green Hospital with records of Plaintiff's ongoing treatment received there after September 2010. (Pl.'s Mem. 9-10). Plaintiff contends these records were necessary for the ALJ to accurately determine "[his] medical status or his Residual Functional Capacity (RFC) at the time of his adjudication." (Pl.'s Mem. 10). Plaintiff asserts that his testimony hinting at the existence of these medical records placed the ALJ under a duty to obtain these documents. *Id*. For the reasons discussed below, the court finds Plaintiff's arguments are unpersuasive.

It is axiomatic that the ALJ has a duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Nevertheless, the burden remains with the claimant to prove that he is disabled and to produce medical evidence supporting his claim. 20 C.F.R. § 416.912(c); *Ellison*, 355 F.3d at 1276. With respect to medical records, the ALJ has a duty to develop the claimant's complete

medical history for the 12 months preceding the month in which the claimant filed his application for supplemental security income. 20 C.F.R. § 416.912(d); *Ellison*, 355 F.3d at 1276. In general, the ALJ's duty to develop the claimant's medical history does not extend to the period after the filing of the claimant's application. *Ellison*, 355 F.3d at 1276 (holding that the ALJ did not have a duty to develop the medical record for the two years after the claimant filed his application); *see also Smith v. Comm'r of Soc. Sec.*, 2012 WL 6197984 (11th Cir. 2012)(citing *Ellison,* 355 F.3d at 1276). A heightened duty to develop the record and obtain up-to-date medical records is imposed upon the ALJ in the case of an unrepresented claimant. *See Brown v. Shalala*, 44 F.3d 931 (11th Cir. 1995).

In the instant case, Plaintiff filed his application for supplemental security income on April 28, 2009. (Tr. 105). Thus, the ALJ was required to develop Plaintiff's medical history for the twelve months prior to April 2009. 20 C.F.R. § 416.912(d); *Ellison*, 355 F.3d at 1276. Plaintiff does not allege the ALJ failed in respect to this obligation; rather, Plaintiff argues the ALJ failed to update his medical records *after* the filing of his application. (Pl.'s Mem. 9-10). Because those dates are outside the twelve month period preceding the date of Plaintiff's application, the ALJ's duty to develop the record does not extend so far. *See Ellison,* 355 F.3d at 1267. Furthermore, it is ultimately Plaintiff's burden to produce medical evidence demonstrating his disability. 20 C.F.R. § 416.912(d); *Ellison*, 355 F.3d at 1276. If Plaintiff believed the updated medical records from Cooper Green were necessary to prove his disability, it was his duty to provide them. Additionally, Plaintiff was at all relevant times represented by counsel in this matter and had ample opportunity to submit the medical records to the ALJ by himself or through counsel. Indeed, the ALJ specifically granted the second hearing expressly for the

purpose of allowing more time to collect medical evidence. (Tr. 105). Plaintiff himself was in the best position to obtain records of his treatment history.

### 2. The ALJ Did Not Commit Error by Failing to Obtain a Consultative Examination.

Second, Plaintiff argues the ALJ should have "obtained a consultative examination (CE) to obtain a medical source opinion (MSO) pursuant to 20 C.F.R. 416.919a." (Pl.'s Mem. 10). According to Plaintiff, this omission amounts to a breach of the ALJ's duty to develop the record, and thus constitutes reversible legal error. (Pl.'s Mem. 9-11). For reasons discussed below, the ALJ was not required to obtain a consultative examination in this case.

The ALJ's duty to develop the record indeed encompasses an obligation to order a consultative evaluation when one is needed to make an informed decision. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (citing *Reeves v. Heckler*, 734 F.2d 519, n.1 (11th Cir. 1984)). However, the ALJ is "not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). Normally, a consultative examination is only required when "necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources." *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (citing 20 C.F.R. § 404.1519a).

In this case, there was sufficient evidence in the record for the ALJ to determine Plaintiff's RFC without ordering a consultative evaluation. Plaintiff's medical history is documented extensively. Among other things, the record includes: medical records documenting Plaintiff's back and shoulder pain dating as far back as October 2005 (Tr. 340-48); records created by UAB hospital after Plaintiff was treated for scald burns (Tr. 319-27); numerous documents reporting the results of various x-rays and CT scans (Tr. 336, 355, 369, 375, 410); ER

records from UAB Medical Center generated following Plaintiff's automobile-pedestrian collision in June 2010 (Tr. 377-402); and medical records from Cooper Green Hospital, where Plaintiff was receiving treatment for pain management on an ongoing basis. (Tr. 403-37). Additionally, Plaintiff himself testified at length describing his subjective experience of pain. (Tr. 59-70).

After reviewing all the medical evidence, the ALJ still concluded he needed "further clarification from a medical expert" in order to reach a truly informed decision. (Tr. 105). In order to ensure that he fully understood Plaintiff's "multiple issues," the ALJ unilaterally scheduled a third hearing and appointed a board certified orthopedic surgeon to serve as an impartial medical expert. (Tr. 21-22). This medical expert reviewed all the evidence, taking into account Plaintiff's reports of chronic pain, and issued an informed opinion as to Plaintiff's RFC. (Tr. 27-31). Thus, there was sufficient evidence for the ALJ to make an informed decision without requesting a consultative evaluation, and the ALJ satisfactorily fulfilled his duty to develop the record in this case.

### B. The ALJ Accorded Proper Weight to the Testimony of the Medical Expert.

Plaintiff's final argument is that the ALJ accorded undue weight to the opinion of the non-examining medical expert, Dr. Brovender. (Pl.'s Mem. 10-11). Plaintiff argues the ALJ should not have relied on Dr. Brovender's testimony because Dr. Brovender made his determinations based on a "grossly incomplete" record and without hearing from Plaintiff in person. (Pl.'s Mem. 10). Essentially, Plaintiff contends that the ALJ determined his RFC based solely on Dr. Brovender's testimony, and this determination was not based on substantial evidence. (Pl.'s Mem. 11). However, contrary to Plaintiff's argument, substantial evidence supports the ALJ's decision to afford considerable weight to the opinions of Dr. Brovender.

When evaluating the weight to be afforded a medical expert's opinion, the ALJ considers, *inter alia*, the expert's relationship with the claimant and the extent to which the expert supports his opinion. *See* 20 C.F.R. § 404.1527. In general, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 404.1527(c)(4). The opinion of a non-examining physician, standing alone, does not constitute substantial evidence where it contradicts the testimony of a treating physician. *Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988) (citing *Johns v. Bowen*, 821 F.2d 551, 554 (11th Cir. 1987)); *see also, Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). However, where the testimony of the non-examining physician is consistent with the report of the examining physician, the ALJ does not err in relying on the testimony of the non-examining physician. *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991).

The ALJ's decision to rely on the testimony of Dr. Brovender is supported by substantial evidence. As a preliminary matter, Dr. Brovender is an impartial medical expert and board certified orthopedist who specifically addressed the question of Plaintiff's RFC in the context of his medical history. (Tr. 27-31). As the ALJ correctly pointed out, no other physician, examining or otherwise, has put forth an opinion that is inconsistent with Dr. Brovender's assessment of Plaintiff's RFC. (Tr. 27, 108). Indeed, Dr. Brovender's opinion is completely consistent with the clinical notes of Dr. Martin Bohnenkamp, a treating physician at Cooper Green. Dr. Bohnenkamp stated in his report that Plaintiff was "not truthful" about his treatment history, and his shoulder pain was "out of proportion to exam." (Tr. 407). An ALJ does not err in relying on the opinion of a non-examining medical expert where it is consistent with the reports of a treating physician. *See Edwards*, 937 F.2d at 584-85.

Furthermore, Dr. Brovender's opinion is consistent with the record as a whole. Plaintiff's subjective pain and objective, documented impairments, although severe enough to prevent him from climbing scaffolding, are not so severe that he could never lift fifty pounds or engage in overhead lifting with his right arm. (Tr. 27-31). For instance, Plaintiff himself testified that his son weighs between sixty and seventy pounds, and he "pick[s] him up often." (Tr. 65).

Because Dr. Brovender's opinion was consistent with the opinions of Plaintiff's treating sources at Cooper Green as well as the record as a whole, the ALJ did not err by relying on his opinion.

## VI.  Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and the ALJ applied the proper legal standards in arriving at this decision. Accordingly, the Commissioner's final decision is due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** on July 30, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE